DAHN v SHEETS

Docket No. 49031. Submitted December 11, 1980, at Lansing.—Decided March 16, 1981. Leave to appeal applied for.

Eleanor M. Dahn, in her own right and as guardian of Daniel A. Nerio, brought an action against Robert G. Sheets and Jack Sheets for negligence and against John C. Bintz and Joan Bintz, individually and doing business as Bintz Apple Mountain, a bar, under the dramshop act for injuries sustained by Daniel Nerio as a result of an automobile accident in which Robert Sheets was the driver of a car owned by Jack Sheets. The claims against Robert Sheets and Jack Sheets were settled prior to trial, but both were retained as defendants pursuant to the name and retain clause of the dramshop act. Following a close of proofs, defendants moved for a directed verdict against Dahn's claim on behalf of Daniel Nerio, which motion was granted. The jury subsequently returned a verdict of no cause of action as to Eleanor Dahn in her own right, Saginaw Circuit Court, Joseph R. McDonald, J. Plaintiff appeals, alleging that the dead man's statute precluded the testimony of certain witnesses as the court had ruled Daniel Nerio incompetent to testify, that the trial court erred in granting defendants' motion for a directed verdict, that plaintiff Dahn's individual claim was prejudiced by the trial court's grant of a directed

REFERENCES FOR POINTS IN HEADNOTES

[1] 81 Am Jur 2d, Witnesses § 305.

[2] 29 Am Jur 2d, Evidence §§ 6-8.

[3] 81 Am Jur 2d, Witnesses § 353.

[4, 6] 45 Am Jur 2d, Intoxicating Liquors § 582 *et seq.*

[5] 75 Am Jur 2d, Trial § 473 *et seq.*

[7] 75 Am Jur 2d, Trial § 467.

[8] 75 Am Jur 2d, Trial § 525.

Direction of verdict in favor of one or more of several defendants after plaintiff has completed his evidence. 48 ALR2d 535.

[9] 45 Am Jur 2d, Intoxicating Liquors § 578.

Liability, under dramshop acts, of one who sells or furnishes liquor otherwise than in operation of regularly established liquor business. 8 ALR3d 1412.

[10] 75 Am Jur 2d, Trial §§ 906, 907.

verdict against her claim on behalf of Nerio, that the trial court erred in failing to instruct the jury on the doctrine of comparative negligence, and that the trial court's instructions to the jury were coercive. *Held:*

1. The dead man's statute has been impliedly abrogated by the Supreme Court's adoption of the rule of evidence pertaining to the competency of witnesses to testify and by its contemporaneous abolishment of the court rule which incorporated the provisions of the dead man's statute. The trial court properly determined that the witnesses were competent to testify.

2. The trial court improperly directed a verdict against Dahn's claim on behalf of Nerio as evidence was introduced from which the jury could have found it to have stated a cause of action under the dramshop act.

3. The record indicates that Dahn's individual claim was not prejudiced by the court's directed verdict against her claim on behalf of Nerio.

4. The dramshop act provides the exclusive remedy for injuries arising out of the sales of intoxicating beverages by licensed retailers. The cause of action against the retailers is not based on negligence, and the trial court properly declined an instruction on comparative negligence.

5. The trial court did not err in instructing the jury. The burden of proving actual prejudice caused by the trial court's instruction was not met by Dahn regarding her individual complaint.

Affirmed in part, reversed in part.

1. EVIDENCE — RULES OF EVIDENCE — WITNESSES — DEAD MAN'S STATUTES — COURT RULES — STATUTES.

The dead man's statute was impliedly abrogated by the adoption by the Supreme Court of the rule of evidence which provides that every person is competent to be a witness unless a court finds after questioning a person that he does not have sufficient physical or mental capacity or sense of obligation to testify truthfully and understandably or that he is precluded from testifying by another rule of evidence, and by the contemporaneous abolishment by the Supreme Court of the court rule on the subject (MCL 600.2166; MSA 27A.2166, GCR 1963, 608, MRE 601).

2. EVIDENCE — RULES OF EVIDENCE.

Rules of evidence, as matters involving judicial practice and procedure, take precedence over conflicting statutes.

3. STATUTES — DEAD MAN'S STATUTES — DEFENSES.

Generally, dead man's statutes are anachronisms which perpetrate rather than prevent injustice; neither public policy nor basic justice favors the substantial impairment of a potentially viable defense.

4. ACTIONS — DRAMSHOP ACT — STATUTES.

The dramshop act does not provide a cause of action for a person who has actively participated in the events leading to the intoxication of the individual responsible for that person's injuries (MCL 436.22; MSA 18.993).

5. MOTIONS AND ORDERS — DIRECTED VERDICTS — EVIDENCE.

A trial court must consider the evidence and all legitimate inferences therefrom in the light most favorable to the nonmoving party in deciding whether to grant a motion for a directed verdict.

6. EVIDENCE — DRAMSHOP ACT — ACTIONS.

Evidence which only tends to show that a plaintiff drank with the intoxicated driver who later caused plaintiff's injuries does not amount to active participation under the dramshop act which would preclude a cause of action for an injured party (MCL 436.22; MSA 18.993).

7. ACTIONS — DRAMSHOP ACT — DIRECTED VERDICTS — STATUTES.

A plaintiff in an action under the dramshop act is not required to affirmatively rebut any aspect of the defense of the action so long as he introduces sufficient evidence to make out a prima facie case of liability, and where such evidence is introduced the granting by the trial court of a defense motion for a directed verdict constitutes error requiring reversal (MCL 436.22; MSA 18.993).

8. COURTS — DIRECTED VERDICTS.

A trial court may direct a verdict as to only one of several codefendants in an action, and this rule should apply also to coplaintiffs where one or more of the coplaintiffs fails to present sufficient evidence against a defendant.

9. INTOXICATING LIQUORS — DRAMSHOP ACT — ACTIONS — COMPARATIVE NEGLIGENCE.

The dramshop act provides the exclusive remedy for injuries arising out of unlawful sales of intoxicating beverages by licensed retailers; the cause of action is not based on negligence and the rule of comparative negligence does not apply.

10. APPEAL — PRESERVING QUESTION — JURY INSTRUCTIONS — BURDEN OF PROOF.

A defendant who on appeal attacks a trial court's jury instruction as coercive and who did not object to the giving of the instruction in the trial court has a greater burden to show that actual prejudice was caused by the instruction than where such an objection was raised below.

*Fortino, Plaxton & Moskal,* for plaintiffs.

*Robert G. Chaklos,* for defendants.

Before: BRONSON, P.J., and J. H. GILLIS and C. L. BOSMAN,* JJ.

BRONSON, P.J. Plaintiff Eleanor Dahn, guardian of Daniel Allen Nerio, instituted suit against defendants in her own right and on behalf of her ward in the Saginaw County Circuit Court pursuant to the dramshop act.[1] MCL 436.22; MSA 18.993. The action was commenced as a result of a February 7, 1975, automobile accident. Defendant Robert Sheets was the driver of the automobile. The mishap occurred near the Bintz Apple Mountain Bar where Sheets and Daniel Nerio, aged 18 and 17 respectively, had been drinking before the accident. Nerio was severely injured, suffering permanent brain damage resulting in speech loss and loss of motor coordination. The trial court found him incompetent to testify at the time of trial.

The action against Robert and Jack Sheets, who were named defendants pursuant to the "name and retain" provision of the dramshop act, was settled prior to trial.

Following the close of proofs, defendants moved for a directed verdict as to Daniel Nerio's claim,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] For purposes of this opinion, the claim brought on behalf of Nerio will be called Nerio's claim and he will be referred to as plaintiff Nerio.

which was granted. The jury returned a "no cause" verdict as to Eleanor Dahn's claim. The trial court denied the motion for a new trial, and this is an appeal as of right from that order. The facts will be further detailed as they related to the individual issues raised.

Plaintiffs first contend that the dead man's statute, MCL 600.2166; MSA 27A.2166, precluded the testimony of Robert Sheets, Charles Roberts, and Sharon Kowaleski as the court had ruled Nerio incompetent to testify. Sheets, as noted earlier, was the driver of the car in which Nerio was injured. Roberts and Kowaleski were employees of the Bintz Apple Mountain Bar on the day of the incident. The trial court held that there was sufficient corroborative testimony introduced so that there was no dead man's statute problem. See, for instance, *Sherberneau v Metropolitan Life Ins Co,* 44 Mich App 339; 205 NW2d 213 (1973), *Hilliker v Dowell,* 54 Mich App 249; 220 NW2d 712 (1974).

We do not address the trial court's rationale for allowing the testimony because we agree with the panel of our colleagues who determined that the dead man's statute has been "impliedly abrogated" by the Supreme Court's adoption of MRE 601 and contemporaneous abolishment of GCR 1963, 608. *James v Dixon,* 95 Mich App 527; 291 NW2d 106 (1980).[2] MRE 601 renders an individual incompetent to testify only if he or she does not possess "sufficient physical or mental capacity or sense of

---

[2] The plaintiffs' argument that the *James* Court was wrong in concluding that MRE 601 impliedly abrogated the dead man's statute is based on a faulty premise. The *James* Court did not conclude, as plaintiffs contend in their brief, that GCR 1963, 608, along with the dead man's statute, itself, was impliedly abrogated. Rather, the Supreme Court *explicitly repealed* this rule effective March 1, 1978—the same date the Michigan Rules of Evidence went into effect. See, 402 Mich cxxxiii. Partly because of the explicit repeal of GCR 1963, 608, this Court, in *James,* ruled the dead man's statute impliedly abrogated.

obligation to testify truthfully and understandably". This rule is clearly in conflict with MCL 600.2166; MSA 27A.2166. Since rules of evidence are matters involving judicial practice and procedure, they take precedence over conflicting statutes. *James, supra,* 530, *Perin v Peuler (On Rehearing),* 373 Mich 531, 541-542; 130 NW2d 4 (1964).

Plaintiffs submit that this Court should determine whether "questions of public policy as well as basic justice" should preclude testimony under the circumstances of each case. We reject this approach because there is nothing in the language of MRE 601 suggesting that this is permissible. Furthermore, the basic policy considerations are substantially similar in every case in which one party is attempting to exclude evidence via the dead man's statute. Plaintiffs want the evidence excluded because it is hard or difficult to rebut, and defendants want it admitted because otherwise their defense will be substantially weakened or even destroyed.[3]

In the instant case, Sheets testified that the intoxicant purchased, beer, was paid for with $5 which he owed Nerio and that the purchase was in satisfaction of the debt. Roberts, the manager of Bintz's bar, testified that his recollection was that Nerio both ordered and paid for the beer. Kowaleski testified that Nerio paid for the beer and picked up the change from the five-dollar bill placed on the bar. Without this testimony, all the defendants could hope for was that the jury would not be convinced of their liability from plaintiffs' presentation of their case. We do not find that

---

[3] Of course, the situation used as an example could be reversed, that is: the defense may wish to exclude the testimony, and without said testimony plaintiffs have no case or a substantially weakened one.

either "public policy" or "basic justice" favors the substantial impairment of a potentially viable defense.[4]

Plaintiff Daniel Nerio asserts that the trial court erred in directing a verdict against him on the basis that he was a noninnocent party under the dramshop act.[5] We agree. In deciding whether to grant a motion for a directed verdict, the trial judge must consider the evidence and all legitimate inferences therefrom in the light most favorable to the nonmoving party. *Caldwell v Fox,* 394 Mich 401, 407; 231 NW2d 46 (1975), *Tiffany v The Christman Co,* 93 Mich App 267, 284-285; 287 NW2d 199 (1979).

Reasonable minds could have disagreed on the proper resolution of this case in light of the testimony adduced. Keith Doering stated that while at the Bintz Apple Mountain Bar he saw Sheets and Nerio, and both appeared to be intoxicated. Doering saw Sheets take money out of his wallet and put it onto the bar. Later, he saw beer sitting in front of Sheets and Nerio, and the money was gone. Moreover, at the time this incident arose, the legal drinking age was 18, while Nerio was only 17 years old. From this testimony, the jury could have concluded that Sheets bought the beer and that Nerio was merely drinking with him. For Nerio to be considered a noninnocent person for purposes of the dramshop act, he must have ac-

---

[4] It is generally agreed that dead man's statutes are anachronisms perpetrating injustice, rather than preventing injustice as plaintiffs argue. See McCormick, Evidence (2d ed), § 65, pp 142-144.

[5] The dramshop act does not provide for a cause of action for a person who has actively participated in the events leading to the intoxication of the individual responsible for his injuries. This rule is usually applied to prevent the intoxicated person, himself, from bringing an action for his injuries. However, it is not so limited. See *Morton v Roth,* 189 Mich 198; 155 NW 459 (1915), *Kangas v Suchorski,* 372 Mich 396; 126 NW2d 803 (1964).

tively participated in Sheets' intoxication. Active participation is not made out by evidence only tending to show that plaintiff drank with the intoxicated driver. *Todd v Biglow,* 51 Mich App 346; 214 NW2d 733 (1974), *lv den* 391 Mich 816 (1974).

In its opinion denying plaintiffs' motion for a new trial, the court stated that since no evidence was presented by Nerio to refute the testimony that he had purchased the beer, he could not be considered an innocent party under the dramshop act. However, the jury was not obligated to accept the defense witnesses' testimony. Both Kowaleski and Roberts were former employees of the tavern, and the jury might have declined to believe their testimony for this reason. This is particularly true in light of the fact that both former employees affirmatively stated that Nerio handed the money to pay for the beer, while Sheets indicated that the five-dollar bill was merely placed on the bar. Nor was the jury required to accept Sheets' testimony that the beer was purchased in satisfaction of a debt he owed Nerio. The record does not indicate that Nerio told Sheets that he agreed that the beer represented satisfaction of the debt. Finally, as Sheets was the individual who actually controlled the money, a jury could conclude that the beer would have been purchased without regard to Nerio's consent or lack thereof.

Plaintiff was not required to offer testimony affirmatively rebutting any aspect of the defense so long as sufficient evidence was introduced to make out a prima facie case of liability. Here, there was evidence introduced from which the jury could have found Nerio not culpable for purposes of a dramshop action. The improper direction of the verdict cannot be considered harmless error as

the jury could have concluded that Dahn was not injured by the illegal sale of an intoxicating beverage to Sheets but, rather, that only Nerio was.

Plaintiff Dahn contends that she is also entitled to a new trial because she was prejudiced by the trial court's direction of a verdict against Nerio and statement to the jury that Nerio was a noninnocent party under the terms of the dramshop act. Both the Michigan Supreme Court and this Court have ruled that a trial court may direct a verdict as to one of several codefendants. *Sloan v Detroit United R Co,* 172 Mich 68, 73; 137 NW 691 (1912), *Annis v Reiser & Co,* 209 Mich 512, 514-517; 177 NW 212 (1920), *Light v Schmidt,* 84 Mich App 51, 59; 169 NW2d 304 (1978). While we fail to find any Michigan cases holding that a trial court may properly direct a verdict against one of joint plaintiffs, there is no reason to apply a different standard in such situations. See 88 CJS, Trial, § 257, p 671, which discusses direction of a verdict for or against one or more of several parties without distinguishing the position of joint plaintiffs and defendants. Where one of two or more plaintiffs fails to present sufficient evidence against a defendant, it would be error not to direct a verdict in favor of the defendant as to said plaintiff.

Plaintiff Dahn merely speculates that she was prejudiced by the improper direction of a verdict against Nerio without pointing to anything in the record which suggests even a probability of prejudice, let alone actual prejudice. In his instructions to the jury, the trial jduge made it clear that the direction of a verdict against Nerio did not deprive Dahn of a right to recover. Consequently, we decline to reverse the jury verdict against Dahn on this basis.

Plaintiffs also argue that in light of *Placek v*

*Sterling Heights,* 405 Mich 638; 275 NW2d 511 (1979), a person's participation in bringing about the intoxication which led to his injury should not be a bar to recovery. We disagree. The dramshop act is the legislatively-created exclusive remedy for injuries arising out of unlawful sales of intoxicating beverages by licensed retailers, and the cause of action is not based on negligence. See *Rowan v Southland Corp,* 90 Mich App 61; 282 NW2d 243 (1979). *Placek* only has applicability to common law tort actions sounding in negligence. If the comparative negligence doctrine is to be applied in dramshop actions, the Legislature must mandate this change.

Plaintiff Dahn also claims that the trial court's instruction informing the jurors that they would be formally excused at five o'clock and, if they had not reached a verdict, would resume deliberations Monday was coercive and unconstitutionally impinged on the right to a jury trial. No objection was lodged against this instruction. As such, Dahn has a greater burden to show actual prejudice caused by the instruction than would normally be the case. *Reed v Stretten,* 69 Mich App 519, 526-527; 245 NW2d 117 (1976). We find that plaintiff Dahn has failed to meet her burden. The situation here is undistinguishable in any persuasive manner from that in *Zeitz v Mara,* 290 Mich 161, 164; 287 NW 418 (1939), where the Supreme Court found a similar instruction noncoercive. Moreover, the trial judge's instruction in this case had a lesser tendency to coerce than the one upheld in *People v Coles,* 28 Mich App 300, 304; 184 NW2d 214 (1970). We find no error.

Affirmed as to plaintiff Dahn individually; reversed as to plaintiff Dahn on behalf of Nerio. No costs, neither party having prevailed in full.